[No. A063475. First Dist., Div. Four. Aug. 23, 1994.]

COUNTY OF ALAMEDA, Plaintiff and Respondent, v.
MARCUS K. JOHNSON, Defendant and Appellant.

**COUNSEL**

Roger R. Rubin for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—The trial court ordered appellant Marcus K. Johnson to pay child support of $1,660 per month and $56,576 in arrears. Johnson appeals,[1] contending that (1) his total obligation in arrears was only $22,649; and (2) the current support order is unjust and inappropriate under the facts of this case. We affirm the judgment.

## I. FACTS

In 1981, Aerial Johnson was born to LaJeanne Doucet and appellant Marcus K. Johnson. From September 1989 through January 1990, respondent County of Alameda provided $1,236.66 in public assistance to Aerial because Johnson did not adequately support his daughter. In August 1990, the county sued Marcus Johnson for reimbursement of this amount and sought a court order compelling him to pay future support.

Johnson did not respond to the complaint until 1992, filing a general denial and an answer. In both documents, he admitted that he was Aerial's father. In October 1992, the county moved for an order granting temporary child support. (See Welf. & Inst. Code, § 11475.)[2] In January 1993, on the parties' stipulation, the court ordered Johnson to pay temporary child support of $750 a month and to take a blood test. In February 1993, Johnson filed a verified answer, disputing paternity. In June 1993, a paternity evaluation determined the likelihood of paternity to be 99.95 percent and soon after, Johnson abandoned his paternity challenge.

At that time, Aerial lived with Doucet and three of her other children, none of whom were Johnson's children. Johnson was paying more than $326

---

[1]In October 1993, Johnson filed a notice of appeal from an August 1993 minute order. When a minute order expressly directs that a written order be prepared, an appeal does not lie from the minute order, but only from the later order. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304 [259 P.2d 901]; see Cal. Rules of Court, rule 2(b); see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 91, pp. 112-113.) If a party purports to appeal from such a minute order, as in this case, it is our practice to dismiss that purported appeal as beyond our jurisdiction and allow him or her to perfect an appeal from a judgment. However, the trial court has filed a judgment in November 1993 that memorializes the payment orders Johnson purported to appeal a month earlier. The August 1993 minute order merges into the November 1993 judgment. (See *In re Blaze* (1969) 271 Cal.App.2d 210, 212 [76 Cal.Rptr. 551]; *Heller* v. *Heller* (1964) 230 Cal.App.2d 679, 681 [41 Cal.Rptr. 177].) As we must liberally construe the notice of appeal in favor of its sufficiency (see Cal. Rules of Court, rule 1(a)), we construe the October 1993 notice of appeal to appeal from the November 1993 judgment. A notice of appeal filed before entry of judgment but after its rendition must be deemed to have been filed immediately after entry. (Cal. Rules of Court, rule 2(c).) Thus, we construe the notice of appeal to have been filed immediately after the November 1993 judgment was filed.

[2]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

per month in temporary child support for Aerial. He declared a total gross income of $111,555 for 1992 and a net monthly disposable income of more than $6,500 in 1993. The county calculated that Johnson should pay $1,660 per month in future child support and owed the county $56,576 in arrearages to cover the period from September 1989 through July 1993. In August 1993, the trial court accepted the county's calculations and ordered Johnson to pay $1,660 per month in child support and $56,576 in arrearages to be paid $200 per month.

In September 1993, Johnson moved to set aside or vacate the judgment, challenging the amount that he was found to be in arrears. In October 1993, the motion to vacate was denied. In November 1993, the trial court found that Johnson had a net annual disposable income of $126,000 and issued a judgment consistent with its prior order.

## II. ARREARAGES

First, Johnson contends that his total obligation in arrears was only $22,649, not $56,576 as the trial court's judgment requires him to pay. He argues that under section 11350, he cannot be required to pay arrearages of more than what the county paid on Aerial's behalf for Aid to Families with Dependent Children (AFDC). The trial court's judgment is consistent with the county's calculation of arrearages owed for the period of September 1989 through July 1993, based on Johnson's ability to pay, rather than on AFDC payments.

In 1975, when the Legislature initially adopted section 11350, this provision only required a noncustodial parent to reimburse a county for AFDC payments made on behalf of that parent's child in cases of separation or desertion. (See former § 11350, subd. (b), added by Stats. 1975, ch. 924, § 5, pp. 2030, 2032-2033, as amended Stats. 1991, ch. 110, § 20.) The statute was enacted to comply with federal standards regarding enforcement of child support. (See Stats. 1975, ch. 924, § 24, pp. 2041-2042.) This version of section 11350 was in effect in 1990, when the county instituted this action.

Johnson was notified of the action in 1990, but did not respond to it until 1992. By that time, a different version of section 11350 was in effect. In 1991, the Legislature amended section 11350, this time for the express purpose of providing "significant financial penalties for the failure to pay child support." (See Stats. 1991, ch. 110, § 2.) The amended statute requires a noncustodial parent to pay to the county the amount of support that would have been specified in a child support order during the period of separation

or desertion, although sums in excess of AFDC payments actually made must be disbursed to the child's family. (See § 11350, subd. (a)(2), added by Stats. 1991, ch. 110, § 20.) The fundamental rule of statutory interpretation is to ascertain the intent of the Legislature in order to give effect to that intent. (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111]; see *In re Prentiss C.* (1993) 14 Cal.App.4th 1484, 1487 [18 Cal.Rptr.2d 541].) By its amendment, we find that the Legislature intended that Johnson must pay to the county all sums that he could have been ordered to pay for Aerial's support, not just the AFDC payments that were actually made to her family on her behalf.

Johnson also contends that the arrearages attributable to the period before the 1991 amendment are inflated because they were based on current guidelines, rather than those in effect during the earlier period. Again, the version of the statute that was in effect at the time that the court issued its 1993 judgment defeats his claim. The amended statute requires that the amount of the parent's obligation "be determined by using the appropriate child support guidelines currently in effect" and must be paid to the district attorney. (§ 11350, subd. (c), added by Stats. 1991, ch. 110, § 20.) Thus, the arrearages aspect of the judgment is legally proper.

### III. CONTINUING SUPPORT

■ Johnson also contends that the current support order is unjust and inappropriate under the facts of this case. Civil Code former section 4721—in effect at the time of the 1993 judgment in this matter—sets forth the formula to be used to calculate a statewide uniform guideline for child support orders. (Civ. Code, former § 4721, subd. (a) [see Stats. 1992, ch. 848, § 6, repealed Stats. 1993, ch. 219, § 50]; see Gov. Code, § 9600, subd. (a).) Under this statute, the amount of child support established by this formula—which took into account the income of both parents—was presumed to be the correct amount of child support to be ordered. (Civ. Code, former § 4721, subd. (d); see *id.*, former § 4721, subd. (b).) However, this presumption could be rebutted by evidence that application of the formula would be unjust or inappropriate due to special circumstances in the particular case. (*Id.*, former § 4721, subd. (e)(6).)

Johnson lists four facts that he contends constitute special circumstances. The fact that an AFDC payment would be less than what he has been ordered to pay is not a special circumstance. The formula always takes the fact of

any AFDC payment into account, implying that the Legislature intended that, in appropriate cases, the support ordered would exceed any AFDC payment that might be made. (See Civ. Code, former § 4721, subd. (b)(6) [Stats. 1992, ch. 848, § 6, repealed Stats. 1993, ch. 219, § 50].) The fact that other members of Aerial's family who are unrelated to Johnson and to whom he owes no support obligation might be benefited by the payment of support beyond mere subsistence levels is not a special circumstance, but one that typically comes into play if the noncustodial parent has a substantial income. (See *In re Marriage of Hubner* (1988) 205 Cal.App.3d 660, 668 [252 Cal.Rptr. 428] [child support may reflect noncustodial parent's lifestyle, even if this benefits other persons that parent is not obligated to support].) The fact that Johnson's income is substantial is a fact that tends to establish that he should pay *more* in child support than the average noncustodial parent, not less. Aerial is entitled to share in his standard of living. (See, e.g., *id.*, at pp. 667-668.) Finally, we find that Johnson's mortgage payment—at less than one-third of his gross monthly income, by his own estimate—is not so high that it constitutes a special circumstance within the meaning of former section 4721 of the Civil Code. Johnson has not met the burden of proof to rebut the statutory presumption that the formula established the correct amount of child support to be ordered.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.