[No. F023873. Fifth Dist. Jan. 15, 1997.]

THE STATE OF OHIO, Plaintiff and Respondent, v.
JOSEPH BARRON, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Katherine E. Donovan for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and M. J. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—Joseph Barron, Jr. (defendant), a noncustodial parent of a minor child, complains regarding the trial court's order requiring he pay support arrearages pursuant to Welfare and Institutions Code[1] section 11350, subdivision (a)(2). The root of defendant's equal protection and due process violation claims is that he is required to pay support to the custodial parent

---

[1]All statutory references hereafter are to the Welfare and Institutions Code unless otherwise indicated.

for his minor child in excess of the amount actually paid out by the state. Defendant correctly observes that noncustodial parents whose children receive Aid to Families with Dependent Children (AFDC) benefits are treated differently from noncustodial parents whose children do *not* receive AFDC benefits. However, this disparity in treatment is rationally related to a legitimate state purpose: conforming California's child support recovery scheme with federal law, thereby ensuring the state's continued access to matched funds from the federal government. We conclude section 11350 is not an arbitrary imposition of pecuniary liability on defendant. Instead, it is a valid exercise of legislative power, mandated by federal law and tailored to impact on the precise individuals (defendant) who are responsible for the expenditure of state funds.

## PROCEDURAL AND FACTUAL ISSUES

On November 17, 1987, while residing in Ohio, Pamela C. (Pamela) gave birth to a son, Joseph Michael C. (minor). The child was conceived while Pamela was stationed in Germany along with defendant to whom she was engaged to be married. When Pamela became pregnant, defendant broke off their engagement. On February 28, 1992, Pamela filed a paternity affidavit claiming defendant was the father of her son. Pamela received monthly AFDC payments from the State of Ohio, although the total amount of aid she received is unclear.

On November 4, 1992, the Common Pleas Court of Allen County, Ohio, entered a judgment certifying to the California Central Registry the issue of the existence of a parent and child relationship between defendant and the minor. The court requested California courts to order defendant to pay current and past due support; provide medical and health insurance for the minor child; and reimburse the Ohio Department of Human Services for birth expenses. This judgment along with all supporting documents was forwarded to the California Central Registry in accordance with the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA), Family Code section 4800 et seq.

The judgment was received by the California Central Registry on November 23, 1992. It is not clear when the action was filed in the Fresno County Superior Court. There is a date stamp on the petition indicating it was filed on May 26, 1993, but this date is crossed out. The Fresno County District Attorney filed a "Citation and Order to Show Cause" on September 23, 1993. Another "Order to Show Cause" was filed on June 7, 1994. A third was filed on September 20, 1994. There is nothing in the record to indicate why three orders to show cause issued. However, it appears the first two

went off calendar because of lack of service. Defendant was served the third order on November 14, 1994.

Defendant appeared in family support court on December 20, 1994, at which time DNA (deoxyribonucleic acid) blood testing was ordered and a continuance granted until March 27, 1995. On March 24, 1995, defendant filed a response to the order to show cause, admitting parentage and agreeing to pay child support prospectively. On March 27, 1995, defendant appeared, again admitted parentage, and agreed to pay prospective support, as well as arrearages equal to the amount actually paid in AFDC to Pamela since November 1991. Defendant claimed at the hearing, without objection from the deputy district attorney, that Pamela had only received AFDC until October 1992. Defendant claimed, therefore, he was only liable for arrearages for the actual amount of AFDC paid to Pamela during the three years preceding entry of the judgment. The court entered a judgment that defendant was the minor's father and ordered defendant to provide ongoing support in the amount of $235 per month, effective November 14, 1994. In addition, the court ordered defendant to pay an additional sum of $35 per month for accrued arrearages.

On April 4, 1995, the court entered a judgment confirming its finding and establishing the amount of the arrearages at $9,870 for the period from September 20, 1991, to November 13, 1994. On May 14, 1996, a "Stipulation for Relief from Judgment and for Entry of Stipulated Judgment and Order" was filed in the Fresno County Superior Court. This order reduced the amount of arrearages to $8,930 for the period from September 20, 1991, to November 13, 1994.

Defendant filed a timely notice of appeal.

DISCUSSION

I. *Section 11350, subdivision (a)(2) does not violate the California Constitution's guarantees of equal protection and due process.*

 Defendant claims his rights to equal protection and due process of law under article I, section 7, subdivision (a) of the California Constitution were violated when he was ordered to pay support arrearages pursuant to the provisions of section 11350, subdivision (a)(2). Defendant argues section 11350 singles him out as a noncustodial parent whose child received AFDC for different treatment than a noncustodial parent whose child has not received AFDC without any rational basis for doing so. He bases this claim on the fact an original order for child support cannot be made retroactive beyond the date of filing of a notice of motion or order to show cause. In

contrast, section 11350, subdivision (a)(2) authorizes retroactive application of a support order for the entire period the noncustodial parent is separated from the child, limited only by the three-year statute of limitations.

Additionally, defendant points out section 11350, subdivision (a)(2) does not limit the state's authority of recovery to just the money it has paid out during that period as AFDC to the custodial parent. It allows the state to recoup the amount of support which would have been ordered by the court, based on the child support guidelines in effect at the time of institution of the action. The state then disburses to the family any amount collected in excess of the amount which it has paid out. It is the assessment of this amount as arrearages to which defendant objects.

### A. Standard of Review

As correctly noted by defendant, constitutional issues are reviewed de novo. When reviewing a statute to determine whether it violates an individual's right to equal protection, it must be remembered that "[l]egislative classifications are not per se violative of federal or California equal protection guarantees. [Citations.]" (*State of Washington* v. *Cobb* (1987) 194 Cal.App.3d 773, 776 [239 Cal.Rptr. 726].) Unless the differentiation made by the statute involves suspect classifications or an alleged infringement of a fundamental interest, the classification is upheld if it is "rationally related to a legitimate state purpose and tailored to accomplish that purpose." (*City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652, 655 [218 Cal.Rptr. 445]; *State of Washington* v. *Cobb, supra,* 194 Cal.App.3d at p. 776.) Section 11350 involves social and economic legislation and, therefore, is subject to the rational basis test. (*State of Washington* v. *Cobb, supra,* 194 Cal.App.3d at p. 776.)

### B. Analysis

Although the action to recover child support was initiated in Ohio, California law is controlling. "Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." (Fam. Code, § 4820.) Therefore, this URESA action is treated as if it were initiated in California. (*In re Marriage of Ryan* (1994) 22 Cal.App.4th 841 [27 Cal.Rptr.2d 580].)

"The equality guaranteed by the equal protection clauses of the federal and state Constitutions is equality under the same conditions, and

among persons similarly situated. The Legislature may make reasonable classifications of persons and other activities, provided the classifications are based upon some legitimate object to be accomplished. [Citation.]" (*Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 659 [34 Cal.Rptr.2d 641, 882 P.2d 358].)

Resolution of defendant's claim comes down to the answer to two questions. First, does the California statutory scheme for collection of child support treat similarly situated individuals differently? Second, if it does treat similarly situated individuals differently, is the disparity in treatment rationally related to a legitimate state purpose and tailored to accomplish that purpose? We conclude the answer to both questions is yes.

### 1. *Treatment of similarly situated individuals*

In defendant's case, the class of similarly situated individuals is the noncustodial parents who do not provide support for their children. Within this general class, there are two subcategories: noncustodial parents whose children do not receive state aid; and noncustodial parents whose children do receive aid (AFDC). It is the difference in treatment of these two categories with respect to liability for child support arrearages about which defendant complains. In order to resolve the issue, therefore, it is necessary to examine the California statutory scheme for enforcement of child support.

Under California law a parent has a duty to support his or her child, regardless of whether the child is legitimate. (Fam. Code, § 3900.) If a parent fails to fulfill the duty to support a child, the other parent, or the child by a guardian ad litem, may bring an action to enforce the duty. (Fam. Code, § 4000.) Enforcement of the support obligation may also be brought by the county:

"(a) The county may proceed on behalf of a child to enforce the child's right of support against a parent.

"(b) If the county furnishes support to a child, the county has the same right as the child to secure reimbursement and obtain continuing support. The right of the county to reimbursement is subject to any limitation otherwise imposed by the law of the state." (Fam. Code, § 4002, subds. (a) & (b).)

Family Code section 4009 limits the retroactivity of an order for child support "to the date of filing the notice of motion or order to show cause, or to any subsequent date, except as provided by federal law (42 U.S.C. Sec. 666(a)(9))."

If these were the only provisions which applied to enforcement of orders for child support, it must be concluded the trial court could not have ordered

defendant to pay arrearages for any period prior to the date of filing of notice of the order to show cause—September 20, 1994. However, in addition to the provisions of the Family Code, the Welfare and Institutions Code provides an avenue for collection of child support. Specifically, section 11350 provides, in pertinent part:

"(a) In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to that family, the noncustodial parent or parents shall be obligated to the county for an amount equal to the following:

"(1) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order, the amount specified in paragraph (2).

"(2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The amount of the obligation established under paragraph (2) of subdivision (a) shall be determined by using the appropriate child support guidelines currently in effect. . . ."

In other words, if a child has received AFDC and there is no order for support, the county may seek to collect not just the amount of aid which it paid, but also the amount of support that would have been ordered at the time the parent deserted the child. The amount of such support is computed using the child support guidelines in effect at the time of institution of the action. This provision was the result of an amendment of section 11350 in 1992. Prior to that amendment, section 11350 provided:

"In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to:

"(a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order,

"(b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; . . ."

Comparing the two versions of the statute, it is apparent the major change was in the formula used to compute the amount owed when there is no court order. In the earlier version of the statute, the maximum amount that could be recovered was limited to the amount which the state paid out in aid to the family. Under the present provisions of section 11350, the maximum the state can recover is determined by the child support guidelines, which may or may not be equal to the amount of aid paid to the family.

Notably, both versions of section 11350 provide for collection of arrearages even when there is no court order. The only difference is in the method of computing those arrearages. Although the plain language of the statute seems to authorize collection of arrearages for the entire period noncustodial parents are separated from the family, this provision must be read in conjunction with Code of Civil Procedure section 338. The three-year statute of limitations period created by this section has been held to apply to recoupment actions under section 11350. (*City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at p. 659.) Therefore, regardless of how long the noncustodial parents have been separated from the family, the state can only recover child support for the three-year period preceding the commencement of the action.

Considering the statutory scheme for collection of child support as a whole, we conclude similarly situated individuals are treated differently. If the child of a noncustodial parent never received any aid from the county, that parent cannot be required to pay support for any period prior to the date of initiation of the action. (See *In re Marriage of Goosmann* (1994) 26 Cal.App.4th 838, 844-845 [31 Cal.Rptr.2d 613] [A court order for child support in California only operates prospectively.]). This is true regardless of whether the action is brought by the other parent, the child, her guardian or the county. However, if the child has received aid from the county, the noncustodial parent may be required to pay support for a period of up to three years prior to the date of initiation of the action.

### 2. *Rational relation to a legitimate state purpose*

The question then is whether this dissimilar treatment of noncustodial parents is rationally related to a legitimate government purpose and tailored to accomplish that purpose. In order to answer this question, it is necessary to consider the AFDC benefit program under which the state seeks reimbursement.

"The AFDC program is based on a scheme of cooperative federalism. [Citation.] It is financed largely by the Federal Government, on a matching

fund basis, and is administered by the States." (*King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) As a condition to receiving federal funding under the AFDC program, a state must submit a state plan to the Secretary of the Department of Health and Human Services containing written assurances that its plan conforms with the requirements of federal statutes and regulations governing the program. (42 U.S.C.A. §§ 601-602.) Additionally, the state is required to adopt a child support program that is in substantial compliance with title IV-D of the Social Security Act, 42 United States Code Annotated sections 651-655. (42 U.S.C.A. § 602(a)(27).) As a condition to receiving AFDC, federal law requires a recipient to assign to the state any rights to support which they may have. (42 U.S.C.A. § 602(a)(26)(A).) This includes rights to support "(i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) *which have accrued at the time such assignment is executed.*" (*Ibid.,* italics added.) The federal law also requires the state to maintain programs for establishing paternity of children born out of wedlock who receive AFDC, and requires the cooperation of the parent receiving AFDC in establishing such paternity. (42 U.S.C.A. §§ 602(a)(26)(B) & 654.)

Under federal law, support rights assigned by an AFDC recipient constitute an obligation owed to the state. (42 U.S.C.A. § 656(a)(1).) The amount of such obligation is:

"(A) the amount specified in a court order which covers the assigned support rights, or

"(B) if there is no court order, an amount determined by the State in accordance with a formula approved by the Secretary, . . ." (42 U.S.C.A. § 656(a)(2).)

This formula is established in 45 Code of Federal Regulations, section 302 (1995). More specifically, section 302.50(b)(2) (1995) provides: "(2) If there is no court order, an amount determined in writing by the IV-D agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with the requirements of § 302.56." 45 Code of Federal Regulations section 302.56 (1995) provides, in pertinent part:

"(a) Effective October 13, 1989, as a condition of approval of its State plan, the State shall establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the State.

". . . . . . . . . . . . . . . . . . . . . . . .

"(c) The guidelines established under paragraph (a) of this section must at a minimum:

"(1) Take into consideration all earnings and income of the absent parent;

"(2) Be based on specific descriptive and numeric criteria and result in a computation of the support obligation; and

"(3) Provide for the child(ren)'s health care needs, through health insurance coverage or other means."

Thus, regardless of whether there is a court order, federal rules dictate a state must employ the same formula for computing the amount due from a noncustodial parent.

California has chosen to participate in the AFDC program. (§ 11200 et seq.) The Department of Social Services has been designated to ensure the state program is in compliance with all provisions of applicable state and federal law. (§ 10600.) The Legislature has enacted a statutory scheme for collection and enforcement of child support to ensure compliance with federal law. It established statewide uniform guidelines for child support for the express purpose of ensuring "that this state remains in compliance with federal regulations for child support guidelines." (Fam. Code, § 4050.) Those guidelines are set out in Family Code section 4055. Consequently, this is the formula a court would use to compute the amount of support a noncustodial parent must provide under either subdivision (a)(1) or (2) of section 11350.

Defendant is not the first to attack section 11350 as violative of a citizen's right to equal protection. Similar claims were made when the statute provided for retroactive collection of support based on the amount of aid actually provided to a child. In *City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d 652, the court found that requiring a noncustodial parent to reimburse the state for support provided before there is a court order or an administrative determination of paternity did not violate equal protection. (*Id.* at pp. 658-659.) The court reasoned "[r]elieving the public of the economic burden of support for the impoverished is a legitimate state purpose." (*Id.* at p. 658.) It also found the state has a legitimate interest in maximizing the benefit payments it can make to all needy children. (*Id.* at p. 659.) It then found section 11350 was tailored to achieve these goals. It noted:

"Although the state has a motive to seek a declaration of paternity, the practical realities of bringing that action will often mean that the paternity determination is not or cannot be made promptly. The state, however, assumes the obligation to deliver benefits as soon as it finds the child eligible to receive them.

"By enacting section 11350 the Legislature has chosen to commence the noncustodial parent's liability for child support with the grant of benefits

rather than with the issuance of a support order. . . ." (*City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at p. 659.)[2]

Citing *Thompson,* the Second District of the Court of Appeal held, in a URESA action, "[a]bsent a preexisting support order, respondent's liability for state-furnished support commenced with the payment of AFDC benefits." (*In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 454 [282 Cal.Rptr. 408].) The court stated the two significant limitations on that liability are the three-year statute of limitations and the noncustodial parent's reasonable ability to pay. (*Ibid.*)

More recently, the First District of the Court of Appeal considered application of the present version of section 11350. (*County of Alameda* v. *Johnson* (1994) 28 Cal.App.4th 259 [33 Cal.Rptr.2d 483].) In *Johnson,* the appellant had been assessed child support arrearages equal to the total amount he would have been ordered to pay under the existing child support guidelines if there had been a court order. (*Id.* at p. 262.) He appealed, claiming the arrearages should have been limited to the amount the county had paid to support his child. (*Ibid.*) Although the appellant did not expressly raise equal protection as a basis for his appeal, in affirming the judgment the court analyzed the Legislature's purpose in amending the section. The court noted section 11350 was initially enacted to comply with federal law regarding enforcement of child support. It also found the Legislature amended section 11350 in 1992 for the "express purpose of providing 'significant financial penalties for the failure to pay child support.' " (28 Cal.App.4th at p. 262.) The court affirmed the judgment stating: "By its amendment, we find that the Legislature intended that Johnson must pay to the county all sums that he could have been ordered to pay for [his daughter's] support, not just the AFDC payments that were actually made to her family on her behalf." (*Id.* at p. 263.)

A similar conclusion was reached by the court in *County of Orange* v. *Dabbs* (1994) 29 Cal.App.4th 999 [35 Cal.Rptr.2d 79]. In *Dabbs* the specific issue addressed by the court was whether amended section 11350 could be applied retroactively. (29 Cal.App.4th at p. 1001.) The county brought an action in November 1992 to recoup AFDC payments it had made to Dabbs's child since February 1990. (*Id.* at pp. 1001-1002.) Without explanation, the trial court ordered Dabbs to pay arrearages equal to the sum actually paid by

---

[2]The court also found, however: "To the extent California's section 11350 seeks reimbursement of benefit funds paid before there has been a support order or an administrative determination of paternity, the section is not mandated by federal AFDC law or regulation." (*City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at p. 657.) As evident by the discussion, *post,* this conclusion is inconsistent with the plain language of the federal statutes.

the county to support his child, even though the county sought the amount that Dabbs should have paid based on the child support guidelines. (*Id.* at p. 1002.) Citing *County of Alameda* v. *Johnson, supra,* 28 Cal.App.4th 259, the court found the trial court should have applied the current provisions of section 11350, subdivision (a)(2), tempered by consideration of the noncustodial parent's current ability to pay. (*County of Orange* v. *Dabbs, supra,* 29 Cal.App.4th at p. 1005.)

It is significant that defendant is not claiming any assessment of arrearages violates equal protection. To the contrary, he seems to concede the formula used to compute arrearages under the superseded version of section 11350 would pass constitutional muster. Therefore, defendant's claim is simply that the formula the state has chosen to compute arrearages is without a rational basis. Defendant's reasoning is fatally flawed because it fails to take into account the underlying purpose of the statutory scheme for enforcement of child support and federal law which mandates those provisions.

Defendant's argument is premised on the concept that the only basis for allowing the state to recover arrearages in child support from him is as reimbursement for money paid out by the state. Certainly that is one basis. But, based on the plain language of the California statutory scheme and the federal law and rules on which it is based, it is not the only reason. The federal law provides that when a state establishes the paternity of a child born out of wedlock, to whom aid is being provided, the state must seek "support for such child from his parent (or from any other person legally liable for such support) . . . ." (42 U.S.C.A. § 654(4)(B).) Additionally, the provisions of the Code of Federal Regulations cited *ante,* do not limit the recovery of arrearages to the amount paid by the state when there is no support order. They specifically provide the amount of support due when there is no court order will be computed using the same guidelines used to establish the amount of child support under a court order. (45 C.F.R. §§ 302.50(a)(2) & 302.56(c) (1995).) Section 11350 mirrors this provision by directing a court to use the guidelines established in Family Code section 4055 when computing the amount of arrearages where there is no court order for support.

It is beyond cavil that state statutes and policy must comply with federal law. (See *Townsend* v. *Swank* (1971) 404 U.S. 282, 285 [30 L.Ed.2d 448, 452, 92 S.Ct. 502] [Illinois statutory definition of a "dependent child" conflicted with federal definition and was, therefore, in violation of supremacy clause]; *King* v. *Smith, supra,* 392 U.S. at p. 333 [20 L.Ed.2d at p. 1134] [Alabama regulation which defined "parent" in a manner inconsistent with definition in Social Security Act was invalid].) The California Supreme

Court has addressed this issue in *County of San Mateo* v. *Dell J.* (1988) 46 Cal.3d 1236 [252 Cal.Rptr. 478, 762 P.2d 1202]. In *Dell J.*, the court was faced with interpreting section 11350 prior to its revision in 1992, in an action to recoup the cost of maintaining a child in foster care. (46 Cal.3d at p. 1239.) Analyzing the relevant provisions of California law, the court concluded: "In short, California's federally approved plan under which AFDC is administered is designed to ensure strict compliance with the federal legislation. Under state law, the County of San Mateo, in seeking a child support order, was obligated to seek reimbursement from appellants of the state AFDC-FC funds expended for the minor's support during his placement pursuant to court order in a foster care group home." (*Id.* at p. 1246.) The court had previously held it was a violation of equal protection to require a parent to pay for the cost of incarceration of a child who had been made a ward of the court. (*In re Jerald C.* (1984) 36 Cal.3d 1 [201 Cal.Rptr. 342, 678 P.2d 917].) In *Dell J.*, the court distinguished its holding in *Jerald C.*, noting the continuing duty of parents to support their children justified requiring them to provide the amount of support they would be paying if the child remained in their home. "[W]here a preexisting legal obligation of support of the dependent is established, there is no constitutional impediment to the state seeking reimbursement from the responsible family members of the reasonable costs of support and maintenance of such dependent for the duration of his placement outside the family home, where such uniform costs can be identified and segregated out from nonallowable costs, allocated amongst similarly situated dependents in a reasonable manner, and where the responsible relatives' liability is subject to reduction according to their reasonable ability to pay." (*County of San Mateo* v. *Dell J.*, *supra*, 46 Cal.3d at p. 1252.)[3] Consequently, the court held compliance with federal law mandated the state seek reimbursement for support paid while a child is placed in foster care. There was, therefore, a rational basis for imposing that liability on the parent, even retroactively.

At least one federal court has also held a state *cannot* impose a child support reimbursement plan which differs from the one mandated by federal law. (*Jackson* v. *Rapps* (8th Cir. 1991) 947 F.2d 332 , cert. den. 503 U.S. 960 [118 L.Ed.2d 208, 112 S.Ct. 1561].) In *Jackson* the court addressed a Missouri statute concerning recovery of child support from a noncustodial

---

[3]It could be argued this holding supports defendant's position—that the state is limited to recovering the amount of money it actually spent to support his child. However, it must be remembered the court was analyzing the previous version of section 11350. Additionally, in *Dell J.,* the state was precluded, based on the court's previous rulings, from collecting any additional amounts spent to confine and treat a child, since this was a cost to be borne by society as a whole. (*County of San Mateo* v. *Dell J.*, *supra*, 46 Cal.3d at p. 1252.) The same cannot be said in defendant's case. Defendant, and not society, should bear the cost of supporting his child.

parent. Like the previous version of section 11350, the Missouri statute authorized the retroactive recovery of the actual amount of assistance provided to the child. (947 F.2d at p. 334.) An action was brought by two noncustodial parents who were ordered to pay the support, claiming the state could not set guidelines for recovery from them that were in variance with the federal law. (*Id.* at pp. 334-335.) After analyzing the federal statutory scheme, the court agreed, stating: "We affirm on the ground that the supremacy clause prevents the implementation of a reimbursement policy other than one in accordance with existing federal regulations." (*Jackson* v. *Rapps*, *supra*, 947 F.2d at p. 337.)

Essentially, the court in *Jackson* held a formula for recovery of child support, such as the one contained in the previous version of section 11350, subdivision (b), was constitutionally infirm. (See also *Commissioner of Social Services* v. *Segarra* (1991) 78 N.Y.2d 220 [573 N.Y.S.2d 56, 577 N.E.2d 47, 50-51] [state not limited to only recovering amount of support paid out; federal law expressly provides for a distribution to the AFDC recipients of money recovered in excess of aid paid].)[4] By amending section 11350, the Legislature did nothing more than conform the California child support recovery scheme with federal law and regulations, to ensure continued access to a federal program that benefits all the citizens of the state. Thus, there is a rational basis for treating defendant differently from those parents whose children the state does not support.

Defendant's claim that assessing arrearages against him in excess of what the state paid out in aid is unfair because a noncustodial parent whose child

---

[4]It is also apparent the federal law envisions an apportionment of any amount collected from a noncustodial parent:

"The amounts collected as support by a State pursuant to a plan approved under this part during any fiscal year beginning after September 30, 1976, shall (subject to subsection (d) of this section) be distributed as follows:

". . . . . . . . . . . . . . . . . . . . . . .

"(2) such amounts as are collected periodically which are in excess of any amount paid to the family under paragraph (1) and which represent monthly support payments shall be retained by the State to reimburse it for assistance payments to the family during such period (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing);

"(3) such amounts as are in excess of amounts retained by the State under paragraph (2) and are not in excess of the amount required to be paid during such period to the family by a court or administrative order shall be paid to the family; and

"(4) such amounts as are in excess of amounts required to be distributed under paragraphs (1), (2), and (3) shall be (A) retained by the State (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing) as reimbursement for any past assistance payments made to the family for which the State has not been reimbursed or (B) if no assistance payments have been made by the State which have not been repaid, such amounts shall be paid to the family." (42 U.S.C. § 657(b).)

does not receive aid cannot be so assessed, begs the question. It is the fact the state has provided support for the child which justifies the action. If a custodial parent never seeks state aid to support a child, it must be presumed the child is receiving adequate support. But, once a parent seeks the assistance of the state to support a child because he or she cannot, and the noncustodial parent is not providing any or sufficient support, it must be assumed there are insufficient funds to provide for the needs of the child. Therefore, the state is justified in seeking reimbursement not only for the money it expended, but for the amount which was necessary to adequately support the child. This is the true purpose for both the federal and state laws: to ensure a child is provided adequate support for his or her needs and to reimburse, to the extent possible, the custodial parent who provides for the child. (See Fam. Code, § 4053, subd. (f) ["Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."].)

Defendant had it within his power to avoid what he now claims is a harsh result by providing support for his child. He should not now be heard to complain when he is required to accept the responsibility that has always been his. Section 11350 is not an arbitrary imposition of pecuniary liability on defendant. It is a valid exercise of legislative power, mandated by federal law and tailored to impact on the precise individuals who are responsible for the expenditure of state funds. It does not, therefore, violate the equal protection or due process clause of the California constitution.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Vartabedian, J., concurred.

---

*See footnote, *ante,* page 62.