[No. E024134. Fourth Dist., Div. Two. Feb. 9, 2000.]

COUNTY OF RIVERSIDE, Plaintiff and Appellant, v. MICHAEL S. BURT, Defendant and Respondent.

**COUNSEL**

Grover C. Trask, District Attorney, and James P. Fullmer, Deputy District Attorney, for Plaintiff and Appellant.

Mickie Reed for Defendant and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—In this case, we are asked to decide whether the Supreme Court's decision in *County of Santa Clara v. Perry* (1998) 18 Cal.4th 435 [75 Cal.Rptr.2d 738, 956 P.2d 1191] limits retroactivity of all child support orders, including those brought pursuant to Welfare and Institutions Code former section 11350, now Family Code section 17402,[1] to the date of filing of the notice of motion or order to show cause.

### PROCEDURAL BACKGROUND AND FACTS

In 1990, Jeremy M. was born out of wedlock to Dale M. as a result of her relationship with Michael S. Burt. On February 9, 1996, the District Attorney's Office, Family Support Division, for the County of Riverside (herein County) initiated this action against Michael S. Burt (herein Mr. Burt). County filed a complaint to establish parental relationship and child support, an application for an expedited child support order, and other notices and documents as required by California statutes. (Former §§ 11475.1, 11475.5, now Fam. Code, §§ 17400, 17434; Fam. Code, § 3624.) The complaint alleged that Mr. Burt is the parent of Jeremy M. It further alleges that the minor child received public assistance starting on March 1, 1993. The prayer requested, inter alia, a finding of paternity, child support from the filing of the complaint forward, and back support from March 1, 1993, to the date of the complaint. Mr. Burt was served on June 17, 1996.

For nearly two years, judgment was delayed. Finally, the parties agreed to proceed to judgment. On August 27, 1998, the trial court ordered a bifurcated judgment naming Mr. Burt the father of Jeremy M. and ordered child support in the amount of $400 per month commencing August 5, 1998. The trial court reserved jurisdiction on the issue of back or accrued child support and continued the case to September 15, 1998. County requested back child support beginning on March 1, 1993, while Mr. Burt requested that it commence on February 1, 1996.

Relying on the holding in *Perry*, the trial court commenced back child support on February 1, 1996. County filed a motion for new trial and/or motion to vacate the judgment and enter a new judgment under Code of Civil Procedure sections 659 and 662, respectively. These motions were denied. This appeal followed.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## DISCUSSION

In *Perry*, our high court consolidated three cases involving county support enforcement services implementing the federal title IV-D program,[2] in which similar support actions in different counties led to different results. All three cases were filed by the respective county under former section 11350.1 (now Fam. Code, § 17404); all sought a finding of paternity and child support; and all involved nonwelfare children. The issue before the courts was the retroactivity of original child support orders. In Santa Clara County, the complaints resulted in support orders retroactive to the date of filing of the notice of motion for judgment. The Sixth District affirmed, finding that support orders can be made retroactive to the filing date of the notice of motion or order to show cause for support. In Riverside County, the complaint led to an order retroactive to the date of filing of the original complaint. We affirmed that decision. Our Supreme Court granted review to resolve the conflict between our decision and those from the Sixth District. Agreeing with the Sixth District's analysis, it found that support orders are retroactive to the date of the filing of the notice of motion or order to show cause.

Although our high court's opinion begins by referencing the fact that both the Family Code and the Welfare and Institutions Code provide jurisdiction for the county, through the district attorney, to obtain child support orders (former §§ 11350, 11350.1, 11475.1; Fam. Code, § 4002), the thrust of the discussion of the case and analysis centers around the statutory interpretation and legislative history of Family Code section 4009. (*County of Santa Clara v. Perry, supra,* 18 Cal.4th 435, 438.) According to our Supreme Court, "Family Code section 4009 . . . governs the effective date for child support orders obtained in family law actions . . . ." (*County of Santa Clara, supra,* at p. 440.) Thus, the court limited its inquiry to "what constitutes compliance with [Family Code] section 4009." (*County of Santa Clara, supra,* at p. 441.)

Mr. Burt disagrees with this interpretation of the *Perry* decision. According to him, the court did not restrict its language to child support actions in nonwelfare cases. Instead, he claims that "the court clearly states that [Family Code section] 4009 applies to 'any order for child support' . . . [including those brought under] Welfare [and] Institutions Code [section] 11350 . . . ." Regarding the court's statement, "[t]hus, our inquiry is limited to what constitutes compliance with [Family Code] section 4009," (*County of Santa Clara v. Perry, supra,* 18 Cal.4th 435, 441), Mr. Burt

---

[2]Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq., herein title IV-D) was enacted in California by former sections 11475 (now Fam. Code, § 17202) and 11475.1 (now Fam. Code, § 17400), and related statutes.

argues, "[r]ead without context, that phrase is singularly unhelpful. However, when read with the previously cited passages that proceed it within the case, it is clear that the Court has already decided [Family Code] section 4009's applicability to child support orders under both the Family Code and the Welfare and Institutions Code and is now addressing the specific compliance with [Family Code] section 4009 in any child support order."

Mr. Burt continues, stating, "[t]he [*Perry*] court then framed the parties' argument. In framing the issue, it states: " 'For defendants, the question is whether an order for child support can be made retroactive to the date the original complaint was filed rather than the date a notice of motion or order to show cause was *served* (emphasis in original). The Attorney General asks whether the order may be retroactive to the date the original complaint was filed or only to the date the motion or order to show cause was *filed* (emphasis in original). Although both Courts of Appeal limited their determination to non-AFDC (Aid to Families With Dependent Children) paternity actions filed pursuant to Welfare and Institutions Code section 11350.1, the Attorney General apparently takes the position that "[a]ll original support orders should be retroactive to the date of filing of the complaint." ' "

Based on the above language, Mr. Burt maintains that "[o]bviously, the Court is addressing child support actions under both the Family and Welfare [and] Institutions Code . . . ." As further support for his position, Mr. Burt states that the court then proceeded "to discuss Family Code [section] 4009, and determine[d] that support orders are retroactive to the date of the filing of the notice of motion or order to show cause . . . mak[ing] it clear that its holding is not limited to cases brought under Welfare [and] Institutions Code [section] 11350.1 when it says, '[t]hat limitation applies to dissolution actions under the Family Code and paternity actions under the Welfare and Institutions Code provisions.' . . ."

■ County challenges Mr. Burt's broad application of the *Perry* court's opinion, emphasizing the fact that the three underlying cases which had been consolidated together were nonaid cases filed under former section 11350.1, not former section 11350. According to County, former section 11350, by its plain language, *only* applies to welfare cases. Thus, for guidance, County directs our attention to *State of Ohio v. Barron* (1997) 52 Cal.App.4th 62 [60 Cal.Rptr.2d 342].

In *Barron*, the State of Ohio paid public assistance for the benefit of the defendant's child from 1991. On September 20, 1994, the Family Support Division of Fresno County's District Attorney's Office, at Ohio's request, filed an order to show cause seeking an order of paternity, current child

support, and reimbursement of public assistance paid for the defendant's child. Following DNA (deoxyribonucleic acid) blood testing, on March 27, 1995, the defendant admitted paternity and agreed to pay prospective support, as well as arrearages equal to the amount actually paid in AFDC to the mother since November 1991. However, the defendant claimed that the mother had only received AFDC until October 1992 and thus he should not be liable for any child support from October of 1992 to November 14, 1994, which was the date of the filing of the order to show cause. The court disagreed and ordered the defendant to pay support arrearages from September 20, 1991, to November 13, 1994. (*State of Ohio v. Barron, supra,* 52 Cal.App.4th 62, 66.)

On appeal, the defendant claimed former section 11350 was unconstitutional because it "singles him out as a noncustodial parent whose child received AFDC for different treatment than a noncustodial parent whose child has not received AFDC without any rational basis for doing so. He base[d] this claim on the fact an original order for child support cannot be made retroactive beyond the date of filing of a notice of motion or order to show cause. In contrast, section 11350, subdivision (a)(2) authorizes retroactive application of a support order for the entire period the noncustodial parent is separated from the child, limited only by the three-year statute of limitations." (*State of Ohio v. Barron, supra,* 52 Cal.App.4th 62, 66-67.)

In resolving the defendant's claim, the court engaged in an extensive analysis of the legislative history for enforcement of child support. "Under California law a parent has a duty to support his or her child, regardless of whether the child is legitimate. (Fam. Code, § 3900.) If a parent fails to fulfill the duty to support a child, the other parent, or the child by a guardian ad litem, may bring an action to enforce the duty. (Fam. Code, § 4000.) Enforcement of the support obligation may also be brought by the county[. (Fam. Code, § 4002, subds. (a) & (b).)] [¶] . . . [¶] [However,] Family Code section 4009 limits the retroactivity of an order for child support 'to the date of filing the notice of motion or order to show cause, or to any subsequent date, except as provided by federal law (42 U.S.C. Sec. 666(a)(9)).' [¶] If these were the only provisions which applied to enforcement of orders for child support, it must be concluded the trial court could not have ordered defendant to pay arrearages for any period prior to the date of filing of notice of the order to show cause—September 20, 1994. However, in addition to the provisions of the Family Code, the Welfare and Institutions Code provides an avenue for collection of child support[, namely, section 11350]." (*State of Ohio v. Barron, supra,* 52 Cal.App.4th 62, 68-69.)

Former section 11350, in relevant part, provided: "(a) In any case of separation or desertion of a parent or parents from a child or children which

results in aid under this chapter being granted to that family, the noncustodial parent or parents shall be obligated to the county for an amount equal to the following: [¶] (1) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order, the amount specified in paragraph (2). [¶] (2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family. [¶] . . . [¶] (c) The amount of the obligation established under paragraph (2) of subdivision (a) shall be determined by using the appropriate child support guidelines currently in effect. . . ." (Stats. 1994, ch. 1269, § 62.3.)

As the *Barron* court points out, "if a child has received AFDC and there is no order for support, the county may seek to collect not just the amount of aid which it paid, but also the amount of support that would have been ordered at the time the parent deserted the child. The amount of such support is computed using the child support guidelines in effect at the time of institution of the action. This provision was the result of an amendment of section 11350 in 1992." (*State of Ohio v. Barron, supra*, 52 Cal.App.4th 62, 69.) Prior to 1992, the maximum amount of support that could be recovered was limited to the amount that the state paid out in aid to the family. Today, the maximum amount is determined by the child support guidelines, which may or may not be equal to the amount of aid paid to the family.

The *Barron* court further observed that "both versions of section 11350 provide for collection of arrearages even when there is no court order. The only difference is in the method of computing those arrearages. Although the plain language of the statute seems to authorize collection of arrearages for the entire period noncustodial parents are separated from the family, this provision must be read in conjunction with Code of Civil Procedure section 338. The three-year statute of limitations period created by this section has been held to apply to recoupment actions under section 11350. [Citation.] Therefore, regardless of how long the noncustodial parents have been separated from the family, the state can only recover child support for the three-year period preceding the commencement of the action." (*State of Ohio v. Barron, supra*, 52 Cal.App.4th 62, 70.)

After considering the statutory scheme for collection of child support as a whole, the *Barron* court concluded that similarly situated individuals are treated differently. "If the child of a noncustodial parent never received any aid from the county, that parent cannot be required to pay support for any period prior to the date of initiation of the action. [Citation.] This is true

regardless of whether the action is brought by the other parent, the child, her guardian or the county. However, if the child has received aid from the county, the noncustodial parent may be required to pay support for a period of up to three years prior to the date of initiation of the action." (*State of Ohio v. Barron, supra,* 52 Cal.App.4th 62, 70.)

Having concluded that similarly situated individuals are treated differently, the court turned to the issue of whether such disparate treatment is rationally related to a legitimate government purpose. To answer that question, it considered the AFDC benefit program under which the state sought reimbursement.

" 'The AFDC program is based on a scheme of cooperative federalism. [Citation.] It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States.' (*King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) As a condition to receiving federal funding under the AFDC program, a state must submit a state plan to the Secretary of the Department of Health and Human Services containing written assurances that its plan conforms with the requirements of federal statutes and regulations governing the program. (42 U.S.C.A. §§ 601-602.) Additionally, the state is required to adopt a child support program that is in substantial compliance with title IV-D of the Social Security Act, 42 United States Code Annotated sections 651-655. (42 U.S.C.A. § 602(a)(27).) As a condition to receiving AFDC, federal law requires a recipient to assign to the state any rights to support which they may have. (42 U.S.C.A. § 602(a)(26)(A).) This includes rights to support '(i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) *which have accrued at the time such assignment is executed.*' (*Ibid.,* italics added.) The federal law also requires the state to maintain programs for establishing paternity of children born out of wedlock who receive AFDC, and requires the cooperation of the parent receiving AFDC in establishing such paternity. (42 U.S.C.A. §§ 602(a)(26)(B) & 654.)

"Under federal law, support rights assigned by an AFDC recipient constitute an obligation owed to the state. (42 U.S.C.A. § 656(a)(1).) The amount of such obligation is:

" '(A) the amount specified in a court order which covers the assigned support rights, or

" '(B) if there is no court order, an amount determined by the State in accordance with a formula approved by the Secretary, . . .' (42 U.S.C.A. § 656(a)(2).)

"This formula is established in 45 Code of Federal Regulations, section 302 (1995). More specifically, section 302.50(b)(2) (1995) provides: '(2) If

there is no court order, an amount determined in writing by the IV-D agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with the requirements of § 302.56.' 45 Code of Federal Regulations section 302.56 (1995) provides, in pertinent part:

" '(a) Effective October 13, 1989, as a condition of approval of its State plan, the State shall establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the State.

" '. . . . . . . . . . . . . . . . . . . . . . . . . .

" '(c) The guidelines established under paragraph (a) of this section must at a minimum:

" '(1) Take into consideration all earnings and income of the absent parent;

" '(2) Be based on specific descriptive and numeric criteria and result in a computation of the support obligation; and

" '(3) Provide for the child(ren)'s health care needs, through health insurance coverage or other means.'

"Thus, regardless of whether there is a court order, federal rules dictate a state must employ the same formula for computing the amount due from a noncustodial parent.

"California has chosen to participate in the AFDC program. (§ 11200 et seq.) The Department of Social Services has been designated to ensure the state program is in compliance with all provisions of applicable state and federal law. (§ 10600.) The Legislature has enacted a statutory scheme for collection and enforcement of child support to ensure compliance with federal law. It established statewide uniform guidelines for child support for the express purpose of ensuring 'that this state remains in compliance with federal regulations for child support guidelines.' (Fam. Code, § 4050.) Those guidelines are set out in Family Code section 4055. Consequently, this is the formula a court would use to compute the amount of support a noncustodial parent must provide under either subdivision (a)(1) or (2) of section 11350." (*State of Ohio v. Barron, supra*, 52 Cal.App.4th 62, 70-72.)

The *Barron* court rejected the defendant's constitutional challenge to former section 11350.

However, the defendant in *Barron* was not the first parent to attack the constitutionality of former section 11350 on grounds that it violates his right

to equal protection. In *City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652 [218 Cal.Rptr. 445], the court found that "there is a rational basis upon which the Legislature has chosen to impose upon non-custodial parents liability for public assistance benefits paid prior to issuance of an order of child support." (*Id.*, at p. 659.) First, the court noted the goal of "[r]elieving the public of the economic burden of support for the impoverished is a legitimate state purpose." (*Id.*, at p. 658.) Next, it found "the state has a legitimate interest in maximizing the benefit payments it can make to all needy children." (*Id.*, at p. 659.)

Concluding that former section 11350 was tailored to achieve these goals, the *Thompson* court observed, "Although the state has a motive to seek a declaration of paternity, the practical realities of bringing that action will often mean that the paternity determination is not or cannot be made promptly. The state, however, assumes the obligation to deliver benefits as soon as it finds the child eligible to receive them. [¶] By enacting section 11350 the Legislature has chosen to commence the noncustodial parent's liability for child support with the grant of benefits rather than with the issuance of a support order." (*City and County of San Francisco v. Thompson, supra*, 172 Cal.App.3d 652, 659.)

In *In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 454 [282 Cal.Rptr. 408], our colleagues in the Second District stated, "Absent a preexisting support order, respondent's liability for state-furnished support commenced with the payment of AFDC benefits[, subject only to] two significant limitations[, namely, the three-year statute of limitations and the noncustodial parent's reasonable ability to pay.]" (See also *County of Alameda v. Johnson* (1994) 28 Cal.App.4th 259, 263 [33 Cal.Rptr.2d 483] ["Legislature intended that [defendant] must pay to the county all sums that he could have been ordered to pay for [his daughter's] support, not just the AFDC payments that were actually made to her family on her behalf"]; *County of Orange v. Dabbs* (1994) 29 Cal.App.4th 999, 1005 [35 Cal.Rptr.2d 79] [defendant was obligated to pay child support arrearages based on the child support guidelines].)

As the above mentioned cases demonstrate, "section 11350 [does] nothing more than conform the California child support recovery scheme with federal law and regulations, to ensure continued access to a federal program that benefits all the citizens of the state. Thus, there is a rational basis for treating defendant differently from those parents whose children the state does not support." (*State of Ohio v. Barron, supra*, 52 Cal.App.4th 62, 76.)

Turning back to the court's opinion in *Barron*, we note that the court expressly considered and rejected the defendant's argument that he should

not be held responsible for child support from the commencement date of aid to the order to show cause. Finding support for its opinion in former section 11350, the court stated, "Defendant had it within his power to avoid what he now claims is a harsh result by providing support for his child. He should not now be heard to complain when he is required to accept the responsibility that has always been his. Section 11350 is not an arbitrary imposition of pecuniary liability on defendant. It is a valid exercise of legislative power, mandated by federal law and tailored to impact on the precise individuals who are responsible for the expenditure of state funds." (*State of Ohio v. Barron*, *supra*, 52 Cal.App.4th 62, 77.) The *Barron* court's words are equally applicable here.

The facts in this case are more similar to the facts in *Barron* than they are to the facts in *Perry*. Accordingly, we agree with County's interpretation of the *Perry* decision and hold that *Perry* does not limit retroactivity to child support orders brought pursuant to former section 11350 to the date of filing of the notice of motion or order to show cause. Instead, when a child support order is initiated pursuant to former section 11350, the noncustodial parent is liable for support commencing from the payment of AFDC benefits, subject only to the three-year statute of limitations and his or her reasonable ability to pay.

## DISPOSITION

The judgment is reversed and remanded to the trial court for further proceedings in accord with this opinion. Each party is to bear its own costs on appeal.

McKinster, J., and Ward, J., concurred.