[No. A081566. First Dist., Div. Three. Mar. 12, 1999.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. LAURENT M. GARNETT, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

Rothschild & Goldin and Laura Goldin for Defendant and Respondent.

**OPINION**

PARRILLI, J.—Family Code section 4071.5 provides that if welfare payments are being made for a child, a parent's child support obligation may not be reduced by the discretionary hardship deductions that would otherwise be available to the parent.[1] In this case the trial court refused to apply section 4071.5, finding it unconstitutional on equal protection grounds. We reverse. The wisdom and fairness of the statute are debatable, but that debate belongs in the Legislature. Section 4071.5 is rationally related to the legitimate state purpose of recouping welfare payments from parents who are not meeting their support obligations, and thus does not violate equal protection.[2]

BACKGROUND

The San Francisco District Attorney filed a motion to modify the child support owed by respondent Laurent M. Garnett for his daughter Trevisa, who lived with her maternal grandmother. The district attorney alleged that Garnett's income had substantially increased since the time of a previous order that reserved the issue of child support.[3] Garnett's response acknowledged a monthly gross income of $1,473, and requested a child support order in the guideline amount with a hardship deduction for his full custody of a

---

[1]Further statutory references are to the Family Code, unless otherwise specified.

We note that public aid for children is well known by the acronym AFDC (Aid to Families With Dependent Children). In 1997, however, the Legislature renamed the AFDC program, calling it the CalWORKs program after the California Work Opportunity and Responsibility to Kids Act. (Welf. & Inst. Code, § 11200; Stats. 1997, ch. 270, § 50.)

[2]We recognize that our holding is at odds with the decision in *County of Orange* v. *Ivansco* (1998) 67 Cal.App.4th 328 [78 Cal.Rptr.2d 886]. We respectfully disagree with the analysis and conclusion of our colleagues in Santa Ana.

[3]The district attorney also sought to recover support arrearages from Garnett. (See Welf. & Inst. Code, § 11350, subd. (a)(2) [parent must reimburse county for public aid provided to child even if there is no support order].) The record does not include the pleadings seeking reimbursement, but it does include a stipulation by Garnett to an unspecified amount of arrearages on the accounts of the family support bureau.

son. At the hearing, the district attorney argued that a hardship deduction was precluded by section 4071.5, because Trevisa was on welfare.

Garnett's counsel argued that section 4071.5 discriminates against low-income parents, particularly those who are the sole providers for children in their custody, like Garnett. The trial court agreed, finding that the statute "is constitutionally discriminatory and that there is no rational basis for requiring poorer people to pay more than richer people." Accordingly, the court set Garnett's support obligation at $174 per month, the amount specified by the child support guideline after reducing Garnett's net disposable income by $174, the maximum permissible hardship deduction under section 4071, subdivision (b).[4] The court did not allow Garnett the low-income adjustment provided by section 4055, subdivision (b)(7), "because that would make the child support lower than the hardship deduction." Garnett was ordered to pay $50 per month on his support arrearages. This appeal followed.

## DISCUSSION

Before reaching the constitutional issues, we briefly review the statutory scheme of which section 4071.5 is a part. A recipient of public aid for a child automatically assigns to the county his or her right to receive child support. (Welf. & Inst. Code, § 11477, subd. (a)(1).) The parent obligated to pay support becomes indebted to the county for the amount of unpaid support specified in a child support order, or if there is no such order, the amount of support determined by the child support guidelines. (Welf. & Inst. Code, § 11350; see *County of Alameda* v. *Johnson* (1994) 28 Cal.App.4th 259, 262-263 [33 Cal.Rptr.2d 483]; *State of Ohio* v. *Barron* (1997) 52 Cal.App.4th 62, 70-72 [60 Cal.Rptr.2d 342].) In cases not involving children on welfare, a court determining the obligor's net disposable income under the guidelines may grant hardship deductions as defined by statute "and applicable published appellate court decisions," in order "to provide equity between competing child support orders." (§ 4059, subd. (g).) The court "may allow the income deductions . . . that may be necessary to accommodate those circumstances" enumerated in section 4071. (§ 4070.) Section 4071, subdivision (a) establishes two categories of hardship deduction—extraordinary health expenses, and the basic living expenses of natural or adopted children living with the obligor parent whom the obligor is required to support. The hardship deduction for resident children is capped at the

---

[4]The district attorney did not provide the court with a calculation of the support payable by Garnett without the hardship deduction. According to the Attorney General's brief, the hardship deduction made a difference of about $48 per month in Trevisa's support order. Another circumstance stated in the appellant's brief, but not in the record, is that the welfare payments for Trevisa "would be in the neighborhood of $325-350."

average amount of the support allocated to nonresident children by the support order in question. (§ 4071, subd. (b).)

Section 4071.5 states: "no hardship shall be deemed to exist and no deduction from income shall be granted if [public] aid payments are being made . . . on behalf of a child or children of the parent seeking the deduction, even if the payments are being received by the other parent." Garnett does not assert that *his* equal protection rights are violated by section 4071.5. He claims his son Jason, who lives with him, is denied equal protection because section 4071.5 prevents the court from granting a hardship deduction to reduce the support Garnett owes for Jason's sister Trevisa. Thus, Garnett has less disposable income to spend on Jason, a situation not faced by children whose nonresident siblings do not receive welfare.[5]

Economic and social welfare legislation does not ordinarily receive the strict constitutional scrutiny reserved for cases involving "suspect classifications" or "fundamental interests." (*King* v. *McMahon* (1986) 186 Cal.App.3d 648, 656 [230 Cal.Rptr. 911] (*King*).) However, Garnett contends we should follow *Darces* v. *Woods* (1984) 35 Cal.3d 871 [201 Cal.Rptr. 807, 679 P.2d 458] (*Darces*), in which our Supreme Court applied strict scrutiny to a state welfare regulation. The regulation excluded undocumented aliens from the family budget unit used to determine the amount of a family's welfare payments. The *Darces* court concluded that the regulation violated the equal protection rights of children who were citizens but whose families also included undocumented alien children. (*Id.* at p. 895.) The court deemed strict scrutiny appropriate because the challenged regulation discriminated against children based on conduct by their parents (illegal immigration) that was beyond the children's control, and classified children based on an immutable trait (birth into an undocumented family) that included two "historically disfavored" characteristics, national origin and ancestry. (*Id.* at p. 893, and fn. 24.)

Here, the statutory classification involves no immutable trait or disfavored characteristic.[6] However, Garnett argues that like the regulation struck down in *Darces*, section 4071.5 discriminates against Jason based on a circumstance beyond his control—the fact that Trevisa receives welfare. According

---

[5]As a person injured by the statute, Garnett has standing to raise an equal protection challenge on Jason's behalf even though Garnett is not a member of the class he claims is being discriminated against. (See 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 68, pp. 116-117.)

[6]It is settled that wealth is not a suspect classification under the federal equal protection clause. (*Harris* v. *McRae* (1980) 448 U.S. 297, 322-323 [100 S.Ct. 2671, 2690-2691, 65 L.Ed.2d 784]; *N.A.A.C.P., Los Angeles Branch* v. *Jones* (9th Cir. 1997) 131 F.3d 1317, 1321.) The matter is less clear, but still doubtful, under California's equal protection clause. (See

to Garnett, a similarly situated resident child whose parent paid support for a nonresident child (not receiving welfare) would be assured that basic living expenses would be met through the hardship deduction.

We are not persuaded that strict scrutiny is appropriate. *Darces* is not on point, just as it was not in *King, supra*, 186 Cal.App.3d 648 which involved an equal protection challenge to a statute denying AFDC foster care benefits to foster children living with relatives. Division Two of this court declined to use the strict scrutiny standard announced in *Darces,* because no suspect classification was at issue and the impact of the statute on the plaintiffs' right to live with their relatives was indirect. (*King, supra*, 186 Cal.App.3d at pp. 657-662.) The court noted that even if a fundamental constitutional right were at issue, strict scrutiny of the challenged classification would not be required unless there were a "real and appreciable impact" on the exercise of the protected right. (*Id.* at p. 662; see also *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 914 [13 Cal.Rptr.2d 245, 838 P.2d 1198]; *Daniels* v. *McMahon* (1992) 4 Cal.App.4th 48, 60 [5 Cal.Rptr.2d 404].)

A child's right to support is owed by the parents, not the state. (§ 3900 [parents share equal responsibility for child support].) The impact of section 4071.5 on Jason's equal enjoyment of that right is indirect and uncertain, depending as it does on the discretionary allowance of hardship deductions in cases of similarly situated resident children whose siblings are not on welfare, and also on Garnett's actual discretionary spending of his disposable income. There are many laws affecting parents' incomes and hence their ability to provide support to their children. It would be absurd to suggest that all such laws must pass strict constitutional scrutiny if they affect some children more severely than others. Courts are not required "to treat as a suspect class any group of children treated differently by government from any other group of children though the two groups are indistinguishable on the basis of all criteria traditionally used to determine whether a classification is suspect." (*King, supra*, 186 Cal.App.3d at p. 658.)

---

*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 766, fn. 45 [135 Cal.Rptr. 345, 557 P.2d 929] [declining to address whether wealth alone is a suspect classification under state Constitution, since fundamental interest in education required strict scrutiny]; *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1161, fn. 9 [278 Cal.Rptr. 614, 805 P.2d 873] [noting absence of federal or state constitutional provision placing financial or economic status on same footing as traditional suspect classifications].) In any event, section 4071.5 applies equally to all parents whose failure to support a child results in the child's receiving public assistance, whether the failure to provide support is due to poverty or any other cause. As in *County of Los Angeles* v. *Patrick* (1992) 11 Cal.App.4th 1246 [14 Cal.Rptr.2d 665], a case upholding a former rule of court denying credit for shared custody in calculating child support if the child was on welfare, ". . . the classification is not between noncustodial parents on a basis of their wealth, but is on the basis of [the] welfare status of the dependent child." (*Id.* at p. 1253.)

Accordingly, we follow the *King* court and many others that have applied the rational basis test to equal protection challenges involving public aid and child support. (See, e.g., *Dandridge* v. *Williams* (1970) 397 U.S. 471, 484-485 [90 S.Ct. 115, 1161-1162, 25 L.Ed.2d 491] [maximum AFDC grant limitation]; *City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652, 656 [218 Cal.Rptr. 445] [reimbursement provisions of Welf. & Inst. Code, § 11350]; *State of Washington* v. *Cobb* (1987) 194 Cal.App.3d 773, 776 [239 Cal.Rptr. 726] [former statute prohibiting consideration of shared custody in allocating support obligations when children received AFDC]; *County of Los Angeles* v. *Patrick, supra,* 11 Cal.App.4th at pp. 1252-1253 [former rule of court enacting same prohibition challenged in *Cobb, supra,* 194 Cal.App.3d 773]; *State of Ohio* v. *Barron, supra,* 52 Cal.App.4th at p. 67 [reimbursement provisions of Welf. & Inst. Code, § 11350, subd. (a)(2)].)

Under the rational basis test, the challenged classification is upheld if it is rationally related to a legitimate state purpose and tailored to accomplish that purpose. (*State of Ohio* v. *Barron, supra,* 52 Cal.App.4th at p. 67.) The purpose of section 4071.5 is clear in light of the statutory scheme governing public aid for children. The statute aims to maximize the recoupment from parents of public funds spent for their children's basic needs. It is not irrational for the state to refuse to permit parents to reduce their support obligations to nonresident children, and their concomitant obligations to reimburse the county for its expenditures on the children's behalf, in those cases where the county has intervened to relieve the children's hardship by providing public aid. It is settled that seeking reimbursement from parents for welfare payments to their children is a reasonable means of achieving the legitimate state purposes of relieving the public burden of supporting the impoverished, and maximizing the benefit payments available for all needy children. (*County of San Mateo* v. *Dell J.* (1988) 46 Cal.3d 1236, 1252-1253 [252 Cal.Rptr. 478, 762 P.2d 1202]; *State of Washington* v. *Cobb, supra,* 194 Cal.App.3d at p. 777; *City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at pp. 658-659.)

We note that to the extent section 4071.5 has a disparate impact on families depending on their income (see fn. 6, *ante*) the rich do not necessarily receive favorable treatment, since it is unlikely that a wealthy parent would qualify for a hardship deduction. The statute effectively distinguishes between parents with moderate and low income who meet their child support obligations without assistance from the state and those who do not. The child support guidelines are designed to account for varying income levels without considering the hardship deductions, which permit only limited discretionary

relief from the support amounts generated by the guidelines. The Legislature could reasonably conclude that when a hardship situation is being alleviated through public aid for a child, further assistance through hardship deductions in calculating child support is unnecessary and would tend to increase welfare costs. It may be that in some cases denying a hardship deduction for nonresident children on welfare will have the effect of bringing obligors' resident children into the welfare system (and creating reimbursement obligations on the part of the absent parents of those children). The wisdom and effect of such public policy decisions are not the province of the courts, however. We must uphold section 4071.5 if it passes muster under settled principles of equal protection. (*Dandridge* v. *Williams*, *supra*, 397 U.S. at p. 487 [90 S.Ct. at pp. 1162-1163]; *King*, *supra*, 186 Cal.App.3d at p. 669.) We conclude that it does.

## DISPOSITION

The order under review is reversed. The trial court shall recompute Garnett's child support obligation in accordance with the provisions of section 4071.5. The parties shall bear their own costs on appeal.

Phelan, J.,* and Corrigan, Acting P. J., concurred.

---

*Retired Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.