Filed 4/16/14  County of Santa Clara v. Rucker CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF SANTA CLARA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HAROLD J. RUCKER,<br><br>    Defendant and Appellant. | H038489<br>(Santa Clara County<br>Super. Ct. No. 1-82-DA492159) |

Appellant Harold J. Rucker challenges a trial court order denying, in part, his claims of exemption regarding monthly garnishments of his federal retirement annuity and a levy on his Thrift Savings account.  We find no error in the trial court's determination of appellant's exemption claims.  Nevertheless, we will remand the matter for the trial court to determine whether the child support judgment and subsequent order setting arrears should be modified in light of new information presented to this court by respondent.

## I.  BACKGROUND

In January 1982, the Santa Clara County District Attorney filed a complaint for child support against appellant under former Welfare and Institutions Code section 11350.1.[1]  The district attorney obtained a default judgment in 1983 ordering appellant to

---

[1] Former Welfare and Institutions Code section 11350.1 authorized district attorneys to prosecute support actions in the name of the county on behalf of a minor child or children.  This section was repealed in 1999 and replaced by Family Code section 17404.

pay $250 in child support to his ex-wife (the custodial parent of his then minor children) retroactive to January 1979. At the time the default judgment was entered, appellant's children were 14 and 15 years old.

In January 2000, child support enforcement duties were transferred from county district attorneys to the newly created State Department of Child Support Services (the Department) and county level Local Child Support Agencies. (Fam. Code, § 17304.) Child support enforcement in Santa Clara County was transferred to respondent Santa Clara County Department of Child Support Services (the County).

In 2001, the County filed a motion to determine appellant's support arrears and obtain an arrears payment schedule order. Appellant opposed the County's motion and brought a counter motion to terminate child support and vacate the 1983 default judgment. Appellant's motion raised several arguments including fraud in the procurement of "back child support." A court commissioner denied appellant's motion, in part because appellant had already challenged the validity of the default judgment twice in 1996. The commissioner granted the County's motion, finding appellant owed $54,670.87 in child support arrears and ordering appellant to pay $250.00 per month toward that amount. Appellant filed a notice of objection and requested a hearing before a judge. He also filed a motion to terminate child support and vacate the default judgment. A superior court judge denied the motion and confirmed the commissioner's order. This court affirmed the trial court, concluding that the validity of the default judgment was res judicata and that the court did not abuse its discretion in denying relief to appellant. (*County of Santa Clara v. Rucker* (Aug. 27, 2003, H023538) (*Rucker I*) [nonpub. opn.].) [2]

---

[2] We take judicial notice of *Rucker I* pursuant to Evidence Code section 452, subdivision (d). We cite *Rucker I* in this opinion under California Rules of Court, rule 8.1115(b)(2), because it is relevant under the doctrine of res judicata.

In April 2012, appellant filed a claim of exemption in the trial court after the Department took steps to levy his Thrift Savings account. In addition to arguing that the Thrift Savings account was exempt from levy, he challenged the $250 per month garnishment of his retirement annuity, which began in 2002. In opposing the motion, the County requested that appellant provide financial information to assist the court in determining how much of the Thrift Savings account, if any, should be exempt from levy under Code of Civil Procedure sections 704.115, subdivision (c) and 703.070, subdivision (c) (requiring court to determine the extent of any exemption to satisfy a child support judgment from private retirement accounts). Appellant replied to the County's opposition by arguing that the child support judgment was unenforceable due to disruptive actions of his ex-wife and the County's inaction with respect to his claim that she had committed welfare fraud.

On May 21, 2012, a court commissioner, sitting as a judge pro tem, held a hearing on appellant's claim of exemption at which time the County estimated arrears at approximately $47,705, and appellant estimated his Thrift Savings account at $25,000. Appellant argued that the 2001 order on arrears was not an "active" child support order, and that the Department's garnishment and levy process for satisfying active child support orders did not apply to orders for child support arrears. The court rejected appellant's argument, denied appellant's request to terminate garnishment of his retirement annuity payments, and exempted the first $10,000 in the Thrift Savings account from levy. In exempting $10,000 from the levy, the court weighed "the fact that [appellant's] on retirement disability and of such an age . . . where he's not going to be able to enter the job market so it becomes important for him to have some money to use for retirement purposes" against "the concern . . . that mother has been waiting a long time, too long . . . to wait for support to be paid." The court's rulings are reflected on a Judicial Council FL-678 form order filed the same day.

On May 22, 2012, appellant filed an objection to the commissioner's findings and requested a hearing before a judge. The court denied the objection because appellant failed to object to the commissioner hearing the matter as a temporary judge before the start of the hearing as required by Family Code section 4251, subdivision (b).

Appellant timely appealed from the May 21, 2012 order.

After briefing concluded in this court, on October 24, 2013 respondent's counsel, Deputy Attorney General Ricardo Enriquez, wrote this court to explain that the Attorney General's Office had received a document from appellant in March 2013, after respondent's brief had been filed. The document, which was not part of the record on appeal, was a declaration signed by Santa Clara County Deputy District Attorney Patricia M. Stanford in 1995 (the Stanford declaration). In a declaration attached to the October 24 letter, Enriquez explained that appellant's letter claimed that the 1983 default judgment which charged support for the three years preceding the filing of the 1982 support complaint was improper because appellant's ex-wife had not been on public assistance during that time period. According to Enriquez, appellant indicated he first learned the dates his ex-wife was on public assistance in 1995 from the Stanford declaration, and appellant attached a copy of that declaration to his letter.

On October 30, 2013, the County filed a motion to augment the record with the Stanford declaration, which summarized the district attorney's support action against appellant through December 1995. Paragraph three of the declaration states that appellant's ex-wife received Aid to Families with Dependent Children (AFDC) at various times between August 1968 and April 1976. The County represented that the declaration was filed in Santa Clara County Superior Court case No. 182DA492159. That case number corresponds to the case number in the underlying action here, including two 1996 orders in the record denying appellant's challenges to the 1983 default judgment. The augmentation motion was granted on February 11, 2014.

## II.  DISCUSSION

**A.    THE DEPARTMENT MAY LEVY FINANCIAL ACCOUNTS TO COLLECT SUPPORT ARREARS REGARDLESS OF THE AGE OF THE SUPPORT OBLIGOR'S CHILDREN**

On appeal, appellant persists that the levy on his Thrift Savings account is illegal because there is no underlying "active" child support order.  Appellant asserts that the federal government "is not a collection agenc[y] for private individuals who[] have allowed a child support judgment to transition into a private money judgment for personal benefit."  Appellant cites *In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 819 (*LaMoure*) and sections of the United States Code (42 U.S.C. §§ 651, et seq.) in support of his position.  As framed, appellant's contention presents a legal question that we review de novo.  (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888 [a trial court's interpretation of statutes and legal conclusions are reviewed de novo].)

In concluding that a court order authorizing a levy is not required for the Department to levy a parent's IRA account for child support arrears, *LaMoure*, *supra*, 198 Cal.App.4th at p. 819 explained:  "The levy is founded on an existing support order, overdue support, and the existence of an order by operation of law requiring payment of support arrears."  Appellant appears to read that excerpt, particularly "existing support order[s]," as permitting levies to satisfy arrears in judgments only when the child support is continuing.  In other words, appellant asserts the Department cannot levy a support obligor's financial assets once the child reaches majority.

We do not read *LaMoure*, or the statutory framework which insures automatic payment of child support arrears by levying on a support obligor's assets in financial institutions, as so limiting.  Family Code section 17453 and *LaMoure* must be read in light of Family Code section 17400, subdivision (e), which provides that "an action to recover an arrearage in support payments may be maintained by the local child support agency at any time within the period otherwise specified for the enforcement of a support judgment, notwithstanding the fact that the child has attained the age of majority."

Family Code section 17453, discussed in *LaMoure*, requires the Department, in conjunction with financial institutions doing business in California, to operate a data match system to identify financial assets held by support obligors in all counties who are past due in their support obligations. *LaMoure* describes that statutory scheme as "a system of ensuring automatic payment of child support arrears by means of levying on support obligor's assets in financial institution accounts." (*LaMoure*, *supra*, 198 Cal.App.4th at p 815.) Neither Family Code section 17453 nor *LaMoure* distinguish between arrearages in continuing support obligations versus arrearages from orders where the obligor's child has reached adulthood. Indeed, such a distinction would be inconsistent with Family Code section 17400, subdivision (e), allowing for the enforcement of a support judgment after a child has attained the age of majority.

The federal statutes cited by appellant also do not support his position. Title 42 United States Code section 651 merely authorizes appropriations to states to enforce child support obligations. While it describes these obligations as "owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living," the federal statute does not speak to or undermine a state's authority to collect child support arrears after a child reaches majority. Indeed, Title 42 United States Code section 664 provides for the collection of past due support from federal tax refunds, which it defines as "the amount of delinquency . . . for support and maintenance of a child (whether or not a minor) . . . ." We therefore conclude the Department has authority to garnish and levy appellant's assets to collect child support arrears even though appellant's children are no longer minors.

**B.** **APPELLANT DID NOT ESTABLISH ELIGIBILITY UNDER FAMILY CODE SECTION 17450 FOR TERMINATION OF COLLECTION ACTIONS**

Appellant also argues that his Thrift Savings levy is unlawful because his retirement annuity payments, which appear to be disability based, were reduced to the point where any collection action must cease under Family Code section 17450(c)(2).[3] We reject this argument because appellant failed to raise it before the trial court and thus forfeited it on appeal. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528-1529.) The argument would also fail on the merits because, as noted by the County, appellant has failed to show how Family Code section 17450 applies to his case. Appellant did not provide the trial court with proof that he meets the federal Supplemental Security Income (SSI) resource test and is receiving or would be eligible for SSI or State Supplemental Payments. Thus, the trial court did not abuse its discretion by not ceasing collection action under Family Code section 17450, subdivision (c)(2). (See *LaMoure*, *supra*, 198 Cal.App.4th at p. 829 [hardship exemption determination reviewed for abuse of discretion].)

---

[3] Family Code section 17450, subdivision (c)(2) provides: "If an obligor is disabled, meets the federal Supplemental Security Income resource test, and is receiving Supplemental Security Income/State Supplementary Payments (SSI/SSP), or, but for excess income as described in Section 416.1100 and following of Part 416 of Title 20 of the Code of Federal Regulations, would be eligible to receive as SSI/SSP, pursuant to Section 12200 of the Welfare and Institutions Code, and the obligor has supplied the local child support agency with proof of his or her eligibility for, and, if applicable, receipt of, SSI/SSP or Social Security Disability Insurance benefits, then the child support delinquency shall not be referred to the department for collection, and, if referred, shall be withdrawn, rescinded, or otherwise recalled from the department by the local child support agency. The department shall not take any collection action, or if the local child support agency has already taken collection action, shall cease collection actions in the case of a disabled obligor when the delinquency is withdrawn, rescinded, or otherwise recalled by the local child support agency . . . ."

## C.     COLLATERAL ATTACKS ON THE UNDERLYING SUPPORT ORDERS

Appellant raises a host of arguments challenging the validity of the underlying 1983 default judgment and 2001 order setting arrears.  We agree with the County that the 1983 judgment and the amount of arrears in this matter are res judicata.  Res judicata serves as a bar to an action when: (1) the issue decided in the prior adjudication was identical to that presented in the action in question, (2) there was a final judgment on the merits, and (3) the party against whom the plea is asserted was a party to or in privity with a party to the prior adjudication.  (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1226.)  Res judicata applies even if a plaintiff presents a different legal theory in a later proceeding.  (*Hatch v. Bank of America* (1960) 182 Cal.App.2d 206, 208.)  Res judicata applies not only to issues actually litigated in a prior proceeding but also to those which could have been litigated as part of the earlier action.  (*Id*. at pp. 210-211.)

In *Rucker I*, this court concluded that appellant's challenge to the validity of the 1983 default judgment raised in the 2001 proceedings to set arrears was barred by res judicata because appellant had attacked the validity of the default judgment twice in 1996.[4]  (*Rucker I*, *supra*, H023538, at p. 5.)  We will not revisit the earlier decision, and we view it as a further bar to appellant's present claims as res judicata.

## D.     NEW EVIDENCE

In the October 24, 2013 letter, the deputy attorney general informs us that the 1983 default judgment may have improperly included three years of retroactive support.[5]  The letter further explains that the County prepared an audit in July 2013 to determine the

---

[4]  Although page 5 of *Rucker I* refers to "the two 1986 orders" and footnote 5 refers to "two motions to set aside default judgment presented in 1986," it is clear from the context of the opinion and the record in this case that the 2003 opinion was referring to the 1996 proceedings.

[5]  The complaint for support was filed January 27, 1982, and the default judgment ordered appellant to pay child support beginning January 27, 1979.

effect of removing the retroactive support, and all accrued interest, for the three-year period preceding the filing of the complaint. That change would reduce arrears from $45,541.80 to $8,312.32 as of May 2013.

In its opposition brief, the County explained that it "had the legal authority to seek three years of retrospective support in cases where AFDC benefits were being paid out," citing *City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652, 656 ("The parent whose child was not on public assistance has no liability for the child's support prior to the commencement of the action seeking support.") Now aware that appellant's ex-wife was not collecting AFDC between 1979 and 1982, the County characterizes the law regarding the availability of retroactive child support in cases where the custodial parent was not receiving AFDC as unclear.

Former Code of Civil Procedure section 338, subdivision (1) (currently codified as Code of Civil Procedure section 338, subdivision (a)) provided a three-year statute of limitations for "[a]n action upon a liability created by statute. . . ." The County argues that former Code of Civil Procedure section 338, subdivision (1), which applied to former Welfare and Institutions Code section 11350 (obligating non-custodial parent to reimburse county for AFDC granted to family), may also have allowed for retroactive child support in non-AFDC support cases commenced by the county district attorney under former Welfare and Institutions Code section 11350.1.

We find this position unavailing because former Welfare and Institutions Code section 11350.1 did not create a liability within the meaning of former Code of Civil Procedure section 338, subdivision (1). (*Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1359 ["For purposes of section 338, subdivision (a), ' " '[a] liability created by statute . . .' " "applies only where the liability is embodied in a statutory provision . . . . " ' "].) Although former Welfare and Institutions Code section 11350.1 authorized the district attorney to prosecute actions for child support, it did not provide the district attorney with any greater rights than the rights of the custodial parent

on whose behalf the enforcement efforts were made. Former Civil Code section 4700, which governed private actions for child support in 1982, provided for the retroactivity of child support orders "to the date of the filing of the notice of motion or order to show cause therefor, or to any subsequent date." If a statutory liability was created for retroactive child support, it was created by former Civil Code section 4700, not by former Welfare and Institutions Code section 11350.1. Thus, the retroactivity provision in former Code of Civil Procedure section 338(1) did not apply to the 1982 support complaint.

Although the County continues to assert that the arrears in this matter are res judicata, its letter concludes by not opposing a remand for the trial court to determine whether this case presents "exceptional circumstances" requiring equitable relief to set aside the retroactive child support, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (to set aside a default judgment based upon extrinsic mistake, a defaulted party must demonstrate merit, excuse the failure to present the defense to the original action, and show diligence in seeking to set aside the default once discovered). In light of the recently surfaced Stanford declaration, the audit result, and our conclusion that retroactive child support in this case was available in 1982 only if appellant's children were receiving public assistance during the three-year period prior to the commencement of the district attorney's support action, we believe a remand is appropriate.

### III. DISPOSITION

The May 21, 2012 order determining exemption claims is vacated and the matter remanded to the trial court to determine whether this case presents "exceptional circumstances" requiring equitable relief to set aside the portion of the 1983 default

judgment ordering three years of support payments retroactive to the filing of the support complaint, as well as the 2003 order setting arrears.

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P.J.

_____

Mihara, J.