Filed 10/21/20  Z.W. v. E.R. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Z.W.,<br><br>        Respondent,<br><br>        v.<br><br>E.R.,<br><br>        Appellant;<br><br>SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>        Respondent. | D076224<br><br><br>(Super. Ct. No. DMB01590) |

APPEAL from an order of the Superior Court of San Diego County, Enrique E. Camarena, Judge.  Affirmed.

E.R., in pro. per. for Appellant.

No appearance for Respondent, Z.W.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Linda M. Gonzalez, Gregory D. Brown and Jennevee H. De Guzman, Deputy Attorneys General, for Respondent, San Diego County Department of Child Support Services.

Z.W. (Mother) and E.R. (Father) have two children and separated several years ago. Father appeals from a May 2019 child support modification order issued after an evidentiary hearing before a superior court judge. The order required Father to (1) retroactively pay $1,434 monthly child support from July 1, 2018 through November 30, 2018; and (2) thereafter pay $1,415 monthly child support on an ongoing basis. The San Diego County Department of Child Support Services (Department) was a party at the hearing on behalf of Mother. (See Fam. Code, § 17400 et seq.)[1]

Father represents himself on appeal. He challenges the May 2019 order, contending: (1) he did not receive notice of an earlier September 2018 hearing; (2) a January 2019 hearing was improper because he objected to a court commissioner presiding over the hearing; (3) the Department was an improper party because his children are not receiving public assistance; and (4) the court improperly calculated his gross income. We find these contentions to be without merit and affirm the order.

FACTUAL AND PROCEDURAL SUMMARY

*Background*

In February 2016, a court commissioner issued an initial child support order requiring Father to pay $555 in monthly child support.

Two years later on June 29, 2018, at Mother's request, the Department filed a petition to increase the child support. The Department served Father by mailing him the petition to an address in San Diego.

On September 6, 2018, a court commissioner held a hearing on the Department's modification motion. Father did not appear at the hearing. At the hearing, the commissioner ordered, without prejudice to November 8,

---

1    All unspecified statutory references are to the Family Code.

2

2018, that Father pay monthly child support in the increased amount of $1,249, effective July 1, 2018. The Department mailed a copy of the order to Father at a different address in San Diego.

Soon after, on October 31 and November 5 and 8, Father filed objections to the September 6 order. One of his objections was his claim that the Department failed to serve the June 2018 motion at his correct address. Father also filed his own motion to lower his child support payments.

The Department agreed a new support modification hearing should be held, and requested that both parents bring income information, including tax documents and a current income and expense declaration to the next hearing.

In January 2019, a court commissioner held a new hearing on the parties' child support modification motions. Father was present at the hearing. During the hearing, the commissioner stated it found Father's objections to the September 6, 2018 order valid and was willing to reconsider this order retroactive to June 2018 (when the Department initially filed its motion). However, Father objected to the commissioner presiding over the matter and refused to participate in the hearing. Thus, the commissioner maintained the order of $1,249 as the child support amount.

Shortly after, Father requested a de novo hearing before a superior court judge. (§ 4251, subd. (c).) The court (Superior Court Judge Enrique Camarena) granted Father's request and held a hearing on the parties' child support modification motions on two dates: April 26 and May 23.

### April 26 Hearing

At the outset of the first hearing, the court said the hearing would be a "trial de novo" on all issues, unless Father wanted to limit the issues. The court told Father he had properly objected to the commissioner presiding over

3

the hearing, and therefore "you get a hearing in front of me, a judge. So we're doing that hearing over again."

Father argued the Department did not properly serve the June 2018 modification petition because it was sent to a wrong address, and therefore he did not have notice of the September 2018 hearing.

The court responded that it found Father's October 2018 objections to the September 2018 order to be timely and valid, so the issue of the June 2018 service was no longer relevant. Although it declined to declare the prior order "void," the court explained it was assuming the September 2018 order was not controlling and that Father had properly objected to the commissioner's consideration of the issues, and therefore it was intending to reconsider all issues regarding the proper child support amount from July 1, 2018 until the current date. The court said: "I understand your objection about the service. And I don't think we need to get there, and here's why procedurally: You timely made your request to vacate. I think it's fair [to go] back to the date that it would have gone into effect . . . ."

In addition to challenging the June 2018 service, Father strenuously and repeatedly objected to the court's subject matter jurisdiction and the Department's participation at the hearing, arguing the dispute was a private contractual matter between himself and Mother because the children were not receiving public assistance. The court overruled these objections, explaining the statutes permit the court to rule on the issues and allow the Department to participate in child support hearings if requested by a parent, even if the children are not receiving public assistance. (See § 17404, subd. (a).) The Department's counsel said Mother had requested the Department's assistance in obtaining an adjustment to her child support.

4

On the merits, the court asked Father whether he had submitted documentation of his income, noting it did not see this information in the file. Father said he works for the San Diego County Airport Authority, but he did not bring any paystubs or any other income information. Mother replied that the caseworkers had repeatedly asked Father for his updated income during the past two years, but Father had refused to provide any responsive information.

The court decided to continue the hearing for one month to May 23, providing the parties additional time to submit relevant income information. The court said at the hearing it would consider the parties' requests for support modification retroactive to July 1, 2018, and Father indicated his agreement with that retroactive date.

The court told the parties to file updated income and expense declarations with supporting documentation. The court also specifically directed the parties to provide paystubs "*back to and including July 1, 2018. So if you can print that up off of a system from work or go to the HR, I think you have enough time to get something to print out, paystubs going back.*" (Italics added.)

*May 23 Hearing*

Before the May 23 hearing, Father filed a motion to dismiss, reasserting his arguments that the court does not have personal or subject matter jurisdiction, and the Department is not a proper party because child support is a matter of private contract between the parties.

Mother, Father and the Department's attorney appeared at the May 23 hearing. At the outset, the court said it had read Father's motion, and then permitted Father to orally explain his arguments and supporting authorities.

5

After considering Father's arguments, the court found no legal basis to dismiss the proceeding. The court said the purpose of the hearing was to consider anew the issue whether child support should be modified beginning on July 1, 2018, and that it intended to consider the parties' evidence as to the appropriate child support amount. Father agreed regarding the retroactive date, but said he was participating in the hearing under duress.

As will be discussed in more detail below, the court then examined the parties' income and expense declarations and supporting paychecks, and asked the parties various questions about their income and expenses. The court concluded it would impute a minimum wage income for Mother for the time when she was not receiving a paycheck. The court then inputted the relevant figures into the statutory guideline calculator, and reached the conclusion that (1) for the period July 1, 2018 through November 30, 2018, Father's child support monthly obligation was $1,434; and (2) effective December 1, 2018, the ongoing child support obligation would be $1,415. The court made clear in its written ruling that its review was de novo and its findings were based on the testimony and evidence presented by the parties at the May 2018 hearing.

## DISCUSSION

### I. *Service of the June 2018 Motion*

Father first challenges the court's May 2019 order based on his argument that he was not properly served with the Department's June 2018 motion to modify child support. He argues the Department sent the motion to an incorrect address, and therefore he was unaware of the September 2018 hearing and unable to appear at the hearing. The Department responds that Father's assertions about the incorrect address are not supported by the record.

6

We need not resolve this dispute because Father's failure to appear at the September 2018 hearing had no effect on the court's ultimate conclusion in May 2019. Father admits he became aware of the commissioner's September 2018 ruling based on a notice mailed to his correct address shortly after that hearing. In October and November 2018, Father responded by filing objections to the September 2018 ruling and also affirmatively asked the court to modify his child support obligations. Father had proper notice of, and attended, the April and May 2019 hearings at which the parties presented their evidence and the court ruled on the evidence.

At these April and May 2019 hearings, the court found Father had timely objected to the court's September 2018 ruling, and made clear this prior ruling was not relevant to its consideration of the issues. The court thus evaluated the child support issues as if they were being raised the first time at the April and May 2019 hearings, based on the evidence presented at the May 2019 hearing. Accordingly, Father's nonappearance at the September 2018 hearing and the commissioner's ruling at that hearing, had no impact on the final outcome of the matter.

On this record, any deficiencies in the service of the June 2018 petition and/or the notice of the September 2018 hearing date were harmless. Under the California constitution and statutes, a court cannot reverse an order if the outcome would have been the same and no miscarriage of justice resulted. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122; Cal. Const. art. VI, § 13.) Those circumstances apply here.

*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, relied upon by Father, is materially different. In *Gorham,* this court reversed a default judgment because the court never acquired fundamental personal jurisdiction over the defaulted party (the appellant). (*Id.* at p. 1221.) To

7

obtain fundamental personal jurisdiction over a nonappearing party, the record must show the party was served with a summons and a complaint. (*Id.* at pp. 1226-1227.) However, the undisputed evidence established the process server had committed perjury in claiming he had served these documents on the appellant. (*Id.* at p. 1230.) The *Gorham* court concluded that without proper service of the summons to initiate the case, the trial court had no power to make any rulings affecting the party who had never appeared in the proceedings. (*Id.* at pp 1230-1231.)

Unlike the absent party in *Gorham*, Father made an appearance in the case and had ample notice and a full opportunity to present evidence and argue his points. The court had personal jurisdiction over Father since at least 2016 when it first issued the child support order. In June 2018, the Department moved to modify the prior order and scheduled a September 2018 hearing. Even assuming this initial notice was sent to the wrong address, Father admits that the next month, he received notice of this ruling and filed written objections. He then received notice of, and participated in, a de novo hearing before a superior court judge. On this record, the court had jurisdiction to rule on the issues raised by the parties.

## II. *Commissioner's Authority*

Father next challenges the commissioner's authority to rule on the child support modification issues.

Generally, cases filed by a local child support agency are referred to a child support commissioner. (§ 4251, subd. (a); *County of Orange v. Smith* (2002) 96 Cal.App.4th 955, 961.) However, where (as here) a party timely objects before and after the commissioner rules on the issues, a party is entitled to a de novo hearing before a superior court judge. (§ 4251, subd. (c); *County of Sacramento v. Llanes* (2008) 168 Cal.App.4th 1165, 1172-1173;

8

*Smith,* at p. 961.)  A de novo hearing means that the court considers the issues independently and is not bound by the commissioner's factual or legal conclusions.  (*Llanes,* at p. 1173.)

In this case, Judge Camarena found Father had properly and timely objected to the commissioner presiding over the case.  Judge Camarena then reviewed the issues independently and gave the parties the opportunity to present new evidence.  Judge Camarena evaluated each party's evidence without deferring to the commissioner's rulings at the September 2018 or January 2019 hearings.  On this record, we find unavailing Father's challenges to the commissioner's rulings as those rulings were superseded.

III.  *Department's Participation in the Case*

Father next contends the May 2019 order must be reversed because the Department initiated the petition and was a party at the proceeding.

In return for receiving federal funding, states are required to provide services related to the establishment, modification and enforcement of child support.  (42 U.S.C. § 654(4)(A).)  The California Legislature enacted a comprehensive statutory scheme to comply with this federal statute. (§ 17000 et seq.; see *County of Lake v. Palla (*2001) 94 Cal.App.4th 418, 421- 422.)  Under this scheme, a county agency (such as the Department) is empowered to seek a child support order or to modify a child support order "if the child is receiving public assistance . . . ."  (§ 17400, subd. (a).) Additionally, "*if requested,*" the agency "shall take th[ese] same actions on behalf of a child who is not receiving public assistance . . . ."  (*Ibid.,* italics added; accord *Plumas County Dept. of Child Support Services v. Rodriquez* (2008) 161 Cal.App.4th 1021, 1027.)  In the latter circumstances, the request must generally be from the child or a parent of the child.  (§ 17404, subd. (a); *Plumas,* at p. 1028.)

9

Father contends the Department was not a proper party because his children "are not receiving Government assistance." However, as set forth above, state law specifically provides for a local agency to petition on a parent's behalf, if requested to do so, even if the children are not receiving governmental aid. (§ 17400, subd. (a).) Mother specifically requested the Department's assistance in this case.

Father contends that even if permitted by statute, the Department's involvement in his case was unconstitutional. He contends that when Mother requested services from the Department, this "force[d] [him] to contract with [the Department] without his consent." He argues the statutory scheme is "unconstitutional" because he is "under duress and forced to participate in the State program." He claims the Department is "infring[ing] on [his] parental rights, 'under color of law.' "

In support, he relies on *Blessing v. Freestone* (1997) 520 U.S. 329 (*Blessing*) and *Troxel v. Granville* (2000) 530 U.S. 57 (*Troxel*). Neither of these decisions supports his arguments.

*Blessing* was a civil rights action brought by five Arizona mothers seeking to compel their state agency to follow federal law and enforce their spouses' child support obligations. (*Blessing, supra,* 530 U.S. at pp. 332-333, 337.) The United States Supreme Court held the parents did not have a broad right to compel the state to comply with Title IV-D (the law requiring states to create and establish child support enforcement systems), but remanded the case for the district court to address whether the plaintiffs were entitled to enforce certain specific rights within the federal scheme. (*Id.* at pp. 345-346.) This holding does not support Father's claim that the Department was not a proper party to seek a child support modification on

10

behalf of Mother, or that the court's order was unconstitutional because child support is solely a matter of private contract between parents.

In *Troxel, supra,* 530 U.S. 57, the United States Supreme Court recognized a parent's fundamental right to make decisions concerning the care, custody, and control of their children, and applied this principle to conclude that a state law providing a trial court discretion to decide if paternal grandparent visitation was in a child's best interests, without requiring the court to give special weight to the parent's wishes, constituted an unconstitutional interference with the parent's rights. (*Id.* at pp. 67-73.)

Unlike the grandparent visitation scheme at issue in *Troxel,* the child support modification order here did not improperly interfere with Father's right to care for his children. The Family Code codifies the general obligation of both parents to support their minor children, and the statewide child support guidelines implement this principle. Numerous courts have rejected constitutional challenges to orders requiring a noncustodial parent to pay monthly child support to the custodial parent. (See, e.g., *City and County of San Francisco v. Garnett* (1999) 70 Cal.App.4th 845, 850; *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 628; *City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652, 659.)[2]

IV. *Amount of Child Support*

Father contends the monthly child support amount was incorrect because the court "miscalculated [his] gross monthly income."

---

[2]    We have reviewed each of the additional decisions cited by Father in his appellate briefs, and find they do not support his arguments.

11

## A. *Relevant Facts*

At the May 2019 hearing, the court used a child support guideline calculator to determine whether the 2016 child support order should be modified. Before doing so, the court calculated numerous components of each party's income and expenses. One of those components was monthly gross income (both taxable and nontaxable).

To determine Father's monthly taxable gross income for 2019, the court used the sole paystub submitted by Father, which was dated April 25, 2019.[3] The paystub showed that from January 1 to April 25, 2019, Father earned a gross taxable income of $19,521.91. Based on this figure, the court mathematically determined that Father's monthly taxable gross income for 2019 was $4,773. When Father questioned how the court reached the $4,773 figure, the court said it entered the $19,522 (rounded-up) figure into its calculator, and the calculator divided that number to reach a monthly sum (taking into account that the figure was less than a full four months because it reflected pay to April 25, 2019).

Father then said he earned a lower amount in 2018. The court responded that it "need[ed] to see a pay stub from the end of 2018 . . . ." Father said he did not have a paystub for 2018. The court then asked, "In all the paperwork you have, you don't have a pay stub from 2018? Or even better, a W-2 for 2018? Your taxes for 2018?" Father responded, "Right now, sir, I do not," and asked the court to "take my testimony as being true . . . [referring to his statement that he earned less in 2018 than in 2019]."

_____

[3] Although this paystub is not in the appellate record, we describe the amounts on the paystub based on statements made by the court and the parties at the hearing.

Mother responded by noting that Father has "been given the opportunity" numerous times over the past several years "to provide his pay stubs," but he had repeatedly refused to provide this information. She said, "he's been given that opportunity at least 10 to 15 times over the last two years to provide his pay stubs, and each time [he has] ignored [these requests]."

The court replied, "I agree with you on that account." The court then decided it was appropriate to conclude that Father's gross income for 2018 was the same as for 2019.

Using these figures and determining the other relevant amounts for the income and expenses of Mother and Father, the court entered the amounts into the calculator and then determined that Father was obligated to pay monthly child support of $1,434 from July 1, 2018 to November 30, 2018; and $1,415 from December 1, 2018 on an ongoing basis.

### B *Analysis*

Father contends the court "miscalculated child support guidelines" because it "miscalculated [his] gross monthly income." Although not entirely clear, it appears he is primarily complaining that the court used his 2019 paycheck to determine his 2018 income.

In calculating child support, courts use a statutory formula, one component of which requires computation of each parent's "annual gross income." (*Asfaw v. Woldberhan* (2007) 147 Cal.App.4th 1407, 1415, italics omitted; see *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 527.) A trial court's determination of a parent's income will be upheld if it is based on legally appropriate factors and "is within the range of the evidence presented." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197.)

13

The record supports the court's determination of Father's monthly income. At the April 2019 hearing, the court specifically told the parties to bring to the May 2019 hearing documentary evidence (in the form of paychecks or paystubs) showing their income beginning in July 2018 through the current date. Father brought only a single April 2019 paystub, reflecting only 2019 income. The evidence showed Father had repeatedly refused to provide the Department with information about his income.

On this record, the court had an appropriate basis to infer that Father's income was the same in 2018 and 2019. Father had notice and the opportunity to present evidence to support his claim that his income was lower in 2018. By failing to do so, the court could reasonably reject this contention.

In his appellate briefs, Father also refers to a $5,163 figure on the court's calculation-results sheet reflecting Father's taxable *and nontaxable* gross income. He argues this figure was incorrect, but does not direct us to any evidence in the record supporting this contention.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, *on the basis of the record presented to the appellate court,* that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609, italics added.)

Father did not meet this burden. There is no evidence in the record to support Father's argument that the court's determination of his gross monthly income (taxable and nontaxable income) was incorrect.

DISPOSITION

Order affirmed.  Appellant to bear respondents' costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.


15